1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BENNIE RAY BROWN,                          Case No. 1:10-cv-01460 OWW JLT

12           Plaintiff,                          ORDER VACATING FINDINGS AND
                                                 RECOMMENDATIONS
13       vs.
                                                 (Doc. 9)
14
      OFFICER JESS BEAGLEY, et al.,              ORDER FINDING COGNIZABLE CLAIMS
15                                               IN THE SECOND AMENDED COMPLAINT
             Defendants.                         AND AUTHORIZING SERVICE
16
                                                 (Doc. 11)
17    _____/

18    I.     BACKGROUND

19           Plaintiff is proceeding pro se and in forma pauperis with a civil action pursuant to 42 U.S.C.

20    § 1983.  By order filed January 18, 2011, the Court dismissed the amended complaint with thirty-days

21    leave to amend.  (Doc. 7.)  When the thirty-day period expired without Plaintiff filing a second amended

22    complaint or otherwise responding to the Court's order, the Court issued an order to show cause why

23    this action should not be dismissed for failure to prosecute.  (Doc. 8.)  Plaintiff did not respond to the

24    order to show cause.  Thus, on March 21, 2011, the undersigned issued findings and recommendations

25    recommending that this action be dismissed.  (Doc. 9.)

26           On April 18, 2011, Plaintiff filed untimely objections to the findings and recommendations,

27    along with a second amended complaint.  (Docs. 10 & 11.)  It appears Plaintiff was hospitalized for a

28    serious heart condition from March 23, 2011 through March 30, 2011, and again from April 6, 2011 to

1

April 7, 2011.  (Doc. 11 at 25-26.)  Good cause appearing, the Court will deem Plaintiff's objections timely, vacate the findings and recommendations issued March 21, 2011, and proceed to screen the second amended complaint below.

## II.    SCREENING REQUIREMENT

The Court is required to review a case filed in forma pauperis.  See 28 U.S.C. § 1915(e)(2).  The Court must review the complaint and dismiss any portion thereof that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  If the Court determines that the complaint fails to state a claim, leave to amend should be granted to the extent that the deficiencies in the pleading can be cured by amendment.  Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

The Civil Rights Act under which this action was filed provides a cause of action against any "person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States.]" 42 U.S.C. § 1983.  To prove a violation of § 1983, a plaintiff must establish that (1) the defendant deprived him of a constitutional or federal right, and (2) the defendant acted under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Collins v. Womancare, 878 F.2d 1145, 1147 (9th Cir. 1989).  "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  In other words, there must be an actual causal connection between the actions of each defendant and the alleged deprivation.  See Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Nevertheless, a plaintiff's obligation to provide the grounds of entitlement to relief under Rule 8(a)(2) requires more than "naked assertions,"

2

1  "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action." Twombly,

2  550 U.S. at 555-57.  The complaint "must contain sufficient factual matter, accepted as true, to 'state

3  a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d

4  868, 883 (2009) (quoting Twombly, 550 U.S. at 570).  Vague and conclusory allegations are insufficient

5  to state a claim under § 1983.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

6  **III.    THE SECOND AMENDED COMPLAINT**

7          Plaintiff alleges that on March 15, 2010, Defendants Beagley and Enns arrested Plaintiff in his

8  room at the Western Night Inn in Bakersfield, California.  (See Doc. 11 at 4, 19.)  Plaintiff was charged

9  with violations of California Health and Safety Code § 11351.5 (possession of cocaine for sale) and

10 California Penal Code § 182(a)(1) (conspiracy to commit a crime).  (Id. at 4, 17.)  The police report

11 regarding the incident was authored by Defendant Beagley and states, in part, the following:

12          On 03/15/10 at 1927 hours officer[s] were dispatched to 505 Union Avenue (Western
13          Night Inn) regarding an unknown situation.  We were advised the following information
            in the text of the call:

14          WESTERN INN. RP CALLING FROM NON WORKING [C]ELL PHONE, 16-20
15          MALE AND FEMALE BLK AND HISP.  WYATT.  2RP SAYS INVOLVING, 233
            AND 235, SUBJS W/GUNS AND KNIVES.  CAN HEAR A LD 415 OVER THE
16          PHONE . . . SUBJS ARE STILL IN A VERBAL TO THE FRONT OF THE RPS
            ROOM 236 . . . . 110 233 AND 235 211 ARE THE NUMBERS INVOLVED . . ALSO
17          225 AND 221 . . .  RP SAYS SUBJS ARE FIGHTING . . CAN NO DESCRIBED
            ANYTHING ANYONE IS WEARING . . . SAYS THE SUBJS W/THE GUNS ARE
18          FROM ROOM 235 PR NOW CORRECTING, SAYS 221 AND 225 ARE THE SUBJS
            W/THE GUNS . . . UNK NAMES . . STILL UNK CLOTHING

19          I know from my training an[d] experience the Western Night Inn is known for
20          prostitution, violent crimes, gang activity, and high narcotics activity.

21          Upon arrival we did not observe any subjects in a physical fight or argument.  I
            responded to room #225 along with Officer Enns, Officer G. Rodriguez, and Officer A.
22          Phlugh. I observed the door to room #225 was open.  I made contact with an unidentified
            female who advised she was not aware of any altercation taking place at the motel.

23          I knocked on the door to #233, however I did not receive an answer at the door.

24          We responded to room #235 and I observed the blinds were partially open.  I observed
25          a female sitting on a bed that was later identified as Lily Keenan.  I observed a subject
            standing next to a small night stand in the southeast corner of the room.  I immediately
26          recognized the subject as, Benny Ray Brown, as I have arrested him in the past for
            narcotics activity under case #06-61646.  I observed a clear glass smoking pipe which is
27          commonly used to smoke rock cocaine on the stand.

28          I knocked on the door and clearly announced "Bakersfield Police Department".  Brown
            opened the blinds further.  I made eye contact with Brown and told him I observed the
            "rock pipe" on the table next to him.  I told Brown not to attempt to destroy the pipe and

3

open the door.  Brown closed the blinds and approximately 10-15 seconds later Brown complied and opened the door.  I asked Brown if he was staying in the room and he said he was.  I observed the pipe was no longer on the table.  I heard water running in the bathroom and the bathroom door was closed.  I observed Keenan was still sitting on the bed.  Due to the pipe no longer being on the table, sounds coming from the closed bathroom, and delay for Brown to open the door, I believed someone was attempting to destroy evidence.  I took Brown into custody without incident.

I told Officer Enns to respond to the bathroom.  Officer Enns observed a subject later identified as, Darius Jones, in the shower.  Officer Enns took Jones into custody without incident.  A records check revealed Jones was on active parole for drug possession.  Officer Enns did not locate any contraband in the bathroom.

I observed a clear plastic baggy on the bed approximately 1' behind Keenan.  I observed the baggy contained 8 individually packaged baggies of suspected rock cocaine.  I also observed US currency next to the baggie.  I took Keenan into custody without incident.  As Keenan stood up I observed she had been sitting on a "rock pipe".  It appeared to be the same pipe from the stand.

Keenan advised she was the registered owner of the room.  We conducted a probation search of the room, however no additional contraband was located.

Brown and Jones were placed in the rear of our patrol vehicle.  Keenan was placed in the rear of Officer Rodriguez's patrol vehicle.

I read Keenan her rights per the Miranda decision which she said she understood and was willing to waive.  Keenan said she and Brown have been in a dating relationship for the past 4 years.  Keenan said she and Brown have been living in room #235 for the past month.  Keenan stated Jones was visiting and had only been with them the past several hours.  Keenan said she smokes rock cocaine occasionally.  I asked Keenan if the pipe she was seated on was hers and she stated it belonged to her and Benny.  Keenan said she moved the pipe underneath her when Benny closed the blinds.  Keenan said she did not know who the money or cocaine belonged to and she did not know it was on the bed.  Keenan said she did not know anything about an altercation taking place at the motel.  Keenan said there were not any firearms in her room.

I read Brown his rights per the Miranda decision which he stated he understood and invoked.

I read Jones his rights per the Miranda decision which he said he understood and was willing to waive.  Jones said he was in the shower when we arrived and did not know what was going on.  Jones said he was unaware of any contraband in the room.  Jones said he was just visiting.  Jones said he last smoked rock cocaine several hours ago but he said he purchased the cocaine off the street and not from Brown or Keenan.  Jones said he was unaware of any firearms or altercation taking place at the motel.

(Id. at 19-20.)  Attached to the police report, Defendant Enns provided a list of the evidence seized at

the motel room.  (Id. at 23.)  The list included (1) $134 in United States currency and (2) a clear glass

smoking pipe.  (Id. at 23-24.)

Plaintiff alleges that the criminal charges levied against him were eventually dropped on April

20, 2010 "in the furtherance of justice" and the case closed.  (Id. at 6.)  Nevertheless, Plaintiff asserts

4

1  that he spent four days in custody and was required to pay a 10% fee on the $35,000 bail bond ($3,500)

2  he secured from Aladdin Bail Bonds.  (Id. at 6, 10.)  In Plaintiff's view, Defendants Beagley and Enns

3  fabricated aspects of the police report in order to make it appear that they had probable cause to search

4  Plaintiff's room and to arrest him.  (Id. at 4-5, 10-12.)  In particular, Plaintiff alleges that Defendant

5  Beagley lied when he stated that he observed a glass crack pipe in Plaintiff's room and that the pipe was

6  later recovered as evidence.  (Id. at 4.)  Plaintiff also alleges that Defendant Enns lied when he stated in

7  a probable cause declaration that Plaintiff was found in possession of 1.9 grams of rock cocaine in the

8  form of eight small packages, that Plaintiff was in possession of a large amount of currency, and that

9  Plaintiff attempted to hide narcotics with the help of a friend.  (Id. at 10.)

10  **IV.    DISCUSSION**

11        **A.    The Search**

12        Plaintiff's allegation that Defendants lacked probable cause and a warrant to search his motel

13  room implicates the Fourth Amendment.  The Fourth Amendment guarantees the right of citizens to be

14  free from unreasonable governmental searches.  United States v. Ruckes, 586 F.3d 713, 716 (9th Cir.

15  2009).  "'[S]ubject only to a few specifically established and well-delineated exceptions,' a search is

16  presumed to be unreasonable under the Fourth Amendment if it is not supported by probable cause and

17  conducted pursuant to a valid search warrant."  Id. (quoting United States v. Caseres, 533 F.3d 1064,

18  1070 (9th Cir. 2008)).  "Probable cause exists when, under the totality of the circumstances, 'there is a

19  *fair probability* that contraband or evidence of a crime will be found in a particular place.'"  United

20  States v. Luong, 470 F.3d 898, 902 (9th Cir. 2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983))

21  (emphasis added).

22        Liberally construing Plaintiff's allegations in this case, it appears Plaintiff is asserting that he did

23  not have a crack pipe in his room and that Defendants' assertions that he did were false.  Assuming this

24  to be true, Defendants would not have had probable cause to enter Plaintiff's room.  According to the

25  police report, Defendants Beagley and Enns initiated a search of the room *because* Defendant Beagley

26  saw a crack pipe on Plaintiff's table.  Thus, in the absence of the pipe, there was not a "fair probability,"

27  prior to the search of finding contraband in the room.  Accordingly, Plaintiff appears to state cognizable

28  Fourth Amendment claims against Defendants Beagley and Enns in this regard.

1      **B.      The Arrest**

2          Plaintiff's allegation that Defendants fabricated facts in the police report to justify Plaintiff's

3   arrest also implicates the Fourth Amendment.  "The Fourth Amendment requires police officers to have

4   probable cause before making a warrantless arrest."  Ramirez v. City of Buena Park, 560 F.3d 1012,

5   1023 (9th Cir. 2009).  "Probable cause to arrest exists when officers have knowledge or reasonably

6   trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has

7   been or is being committed by the person being arrested."  Id. (quoting United States v. Lopez, 482 F.3d

8   1067, 1072 (9th Cir. 2007)).

9          Here, Plaintiff alleges that Defendants fabricated facts in the police report to make it appear as

10  if they had probable cause to arrest him.  Plaintiff asserts that, contrary to the police report (1) there was

11  no glass crack pipe in his room; (2) he did not possess 1.9 grams of rock cocaine; (3) he did not possess

12  a large amount of currency at the time of his arrest; and (4) he did not attempt to hide narcotics with the

13  assistance of a friend.  Against this backdrop, Plaintiff emphasizes that the assistant district attorney

14  elected not to prosecute Plaintiff and the criminal charges levied against him were dropped.  Assuming

15  these allegations to be true, Plaintiff appears to state cognizable claims under the Fourth Amendment

16  against Defendants Beagley and Enns for arresting Plaintiff without probable cause.

17      **C.      The Bail Bond Fee**

18         It is unclear whether Plaintiff claims Defendants violated the Fourteenth Amendment by failing

19  to refund him the $3,500 he paid to Aladdin Bail Bonds to secure bail.  Plaintiff spends considerable

20  energy emphasizing that he is entitled to the $3,500 under the Fourteenth Amendment and California

21  Penal Code 1384 because the criminal charges levied against him were dismissed.[1]  (Doc. 11 at 6, 10-

22  12.)  In any event, Plaintiff does not demonstrate a violation of the Fourteenth Amendment, but rather,

23  a misunderstanding of the bail bond process, if anything.  The $3,500 Plaintiff paid to Aladdin Bail

24  Bonds was a 10% fee for securing Plaintiff bail, which was set at $35,000.  Once the criminal charges

25  against Plaintiff were dismissed, Plaintiff's obligations under the bail bond were discharged, but this

26  does not mean that Plaintiff is entitled to recover the $3,500 paid to Aladdin Bail Bonds.  Thus, while

27

28
_____

   [1]  California Penal Code 1384 provides: "If the judge or magistrate directs the action to be dismissed . . . his [the
defendant's] bail is exonerated, or money deposited instead of bail must be refunded to him[.]"

1    the $3,500 may ultimately be considered in calculating damages on Plaintiff's Fourth Amendment false

2    arrest claims, it does not support a separate cognizable claim.

3        **D.      Conclusion**

4        In sum, Plaintiff states cognizable claims under the Fourth Amendment against Defendants

5    Beagley and Enns for (1) searching Plaintiff's motel room without probable cause; and (2) arresting

6    Plaintiff without probable cause.

7    **V.    ORDER**

8        For the reasons set forth above, it is **HEREBY ORDERED** that:

9        1.    Plaintiff's April 18, 2011 objections to the findings and recommendations filed March

10             21, 2011 (Doc. 10) are deemed timely.

11       2.    The findings and recommendations issued March 21, 2011 (Doc. 9) are vacated.

12       3.    Service of the second amended complaint is appropriate for, and shall be initiated on,

13             Defendants Beagley and Enns.

14       4.    The Clerk of the Court shall send Plaintiff two (2) USM-285 forms, one (1) summons,

15             one (1) Notice of Submission of Documents form, an instruction sheet, and a copy of the

16             endorsed second amended complaint filed April 18, 2011 (Doc. 11).

17       5.    Within thirty (30) days from the date of this order, Plaintiff shall complete the attached

18             Notice of Submission of Documents and submit the completed Notice to the Court with

19             the following documents:

20             a.    One completed summons;

21             b.    One completed USM-285 form for each defendant listed above; and

22             c.    Three (3) copies of the endorsed second amended complaint.

23       6.    Plaintiff need not attempt service on Defendants and need not request waiver of service.

24             Upon receipt of the above-described documents, the Court will direct the United States

25             Marshal to serve Defendants pursuant to Federal Rule of Civil Procedure 4 without

26             payment of costs.

27   ///

28   ///

7.     Failure to comply with this order will result in a recommendation that this action be

dismissed.

IT IS SO ORDERED.

Dated:   **April 25, 2011**                                              _____**/s/ Jennifer L. Thurston**_____
                                                                                          UNITED STATES MAGISTRATE JUDGE